(193 P.3d 520)
No. 99,867

IN THE MATTER OF THE ADOPTION OF BABY BOY M., a/k/a M.C.M., a minor child born April 3, 2007. W.E. and S.E., *Appellees*, and K.L., *Appellant*.

Opinion filed October 10, 2008.

*Shaye L. Downing*, of Sloan, Eisenbarth, Glassman, McEntire, & Jarboe, L.L.C., of Topeka, for appellant natural father.

*Allan A. Hazlett*, of Law Office of Allan A. Hazlett, P.A., of Topeka, for appellees adoptive parents.

Before GREENE, P.J., GREEN and CAPLINGER, JJ.

GREENE, J.: K.L., the unwed natural father of Baby Boy M., challenges the termination of his parental rights and the adoption of his child, arguing that the district court in Kansas either lacked jurisdiction or should have declined jurisdiction and that the record lacks evidence to support a termination of his parental rights. Although we conclude the court had jurisdiction, we conclude the district court failed to make the requisite findings to determine if it should decline jurisdiction or to support a termination of parental rights, thus requiring that we reverse and remand for further proceedings before a different district judge.

## Factual and Procedural Overview

K.L. and C.M., the natural mother of Baby Boy M., have known each other since childhood. They dated for 2 months in late 2005 and again in mid-2006, while residing in Wisconsin. The relationship resulted in the conception of this child, and there has been no dispute as to K.L.'s paternity. C.M. advised K.L. of her pregnancy in July 2006, but in September 2006, K.L. advised that he would not marry her but he would support her and the baby. This advice apparently provoked C.M. to move to Minnesota to live with a friend, but within a month or so, C.M. moved to Kansas and concealed this move and her new residence from K.L. for some time.

The record shows K.L. made numerous attempts to locate C.M. but was not successful until an e-mail message in March 2007, wherein he stated he wanted to meet his child and know that the baby was safe. C.M. returned an e-mail message to K.L. but persisted in her refusal to disclose her residence. On April 3, C.M. gave birth to Baby Boy M. in Topeka, Kansas, and relinquished her rights to the child the next day.

On April 4, 2007, K.L. filed in Wisconsin a motion for primary physical placement and sole legal custody of the child, supported by an affidavit averring in part that C.M.'s residence was unknown to him. On April 6, 2007, the adoptive parents filed in Shawnee County, Kansas, a petition for adoption and termination of K.L.'s parental rights, attaching a temporary custody placement agree-

ment retaining legal custody with a licensed adoption agency in Kansas but giving physical custody to the adoptive parents in New Mexico. K.L. timely responded by filing in the Kansas proceeding his petition to dismiss adoption proceeding or, in the alternative, petition to vacate temporary custody order and request for immediate physical placement.

After conducting an evidentiary hearing, the district court in Kansas concluded that it had jurisdiction and entered its Decree of Adoption and Termination of Parental Rights. K.L. timely appeals from these orders.

## *Did the District Court have Jurisdiction Given K.L.'s Wisconsin Filings?*

### *Statutory Abstention Requires Determination of Potential Jurisdiction of the Other State Under the UCCJEA.*

K.L. challenges jurisdiction in Kansas, citing K.S.A. 59-2127(a), which states:

"A court of this state may not exercise jurisdiction over a proceeding for adoption of a minor if at the time the petition for adoption is filed a proceeding concerning the custody or adoption of the minor *is pending* in a court of another state exercising jurisdiction substantially in conformity with the uniform child custody jurisdiction and enforcement act, or this act unless the proceeding is stayed by the court of the other state." (Emphasis added.)

The adoptive parents argue on appeal that the district court properly asserted jurisdiction because the natural mother had voluntarily relinquished her parental rights prior to the filing of the Kansas proceeding. The district court initially concluded that jurisdiction was improper in Wisconsin because no service had been obtained on the natural mother in those proceedings, but the court ultimately decided that Wisconsin was not a convenient forum because the child "has no contact with [Wisconsin]," citing *In re Adoption of Baby Girl B.*, 19 Kan. App. 2d 283, 867 P.2d 1074, *rev. denied* 255 Kan. 1001 (1994).

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. To the extent a jurisdiction question requires statutory interpretation or application, this also frames a question of law for which appellate courts have unlimited

review. *Bruch v. Kansas Dept of Revenue*, 282 Kan. 764, 774, 148 P.3d 538 (2006).

Parallel to K.S.A. 59-2127 for jurisdiction abstention in adoption proceedings is a provision within the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 38-1336 *et seq.*, for jurisdiction abstention in child custody proceedings, codified in Kansas at K.S.A. 38-1353(a), which provides:

"[A] court of this state may not exercise its jurisdiction under K.S.A. 38-1348 through 38-1357 and amendments thereto if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child *has been commenced* in a court of another state having jurisdiction substantially in conformity with this act, unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under K.S.A. 38-1354 and amendments thereto." (Emphasis added.)

Although these statutory provisions are different in their respective focus on "pending" versus "commenced" proceedings in another state, both have applicability here because the Kansas court had before it matters of custody, parental rights, and adoption. Moreover, we need not analyze this difference in the statutes because the provisions are identical in requiring abstention only if the other state proceeding is "pending" or "commenced" in a court *"having"* or *"exercising"* *"jurisdiction substantially in conformity with* [the UCCJEA]." (Emphasis added.) See K.S.A. 38-1353(a); K.S.A. 59-2127(a). The paramount question before us is whether Wisconsin had jurisdiction "substantially in conformity with" the UCCJEA. See *In re Marriage of Ruth*, 32 Kan. App. 2d 416, 422-23, 83 P.3d 1248, *rev. denied* 278 Kan. 845 (2004); *In re Marriage of Nadeau*, No. 99,183, unpublished opinion filed July 3, 2008, slip op. at 4; see also *In re Marriage of Sareen*, 153 Cal. App. 4th 371, 377, 62 Cal. Rptr. 3d 687 (2007) (pertinent question is not whether the other forum had jurisdiction under its own laws but whether such jurisdiction is substantially in conformity with the UCCJEA).

## Did Wisconsin Have Jurisdiction?

Turning to the UCCJEA's jurisdiction provisions, we must determine whether the Wisconsin court had jurisdiction over the issues raised by K.L.'s initial filing. Because the pleading sought both

initial placement and custody of the child, the applicable UCCJEA jurisdiction provision is that for "initial child custody." In Kansas, the uniform provision on jurisdiction is codified at K.S.A. 38-1348, and in Wisconsin, this provision is codified at Wis. Stat. § 822.21 (2007), and provides in material part:

"(1) Except as provided in s. 822.24, a court of this state has jurisdiction to make an initial determination *only* if any of the following applies:

(a) This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state.

(b) A court of another state does not have jurisdiction under par. (a), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under s. 822.27 or 822.28." (Emphasis added.)

The term "home state" is defined as

"the state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months immediately before the commencement of a child custody proceeding. In the case of a child less than 6 months of age, the term means the state in which the child lived from birth with any of the persons mentioned in this subsection. A period of temporary absence of any of the persons mentioned in this subsection is part of the period." Wis. Stat. § 822.02 (2007).

See K.S.A. 38-1337(8).

Applying these UCCJEA provisions as codified in Wisconsin, it is clear that (i) Wisconsin was *not* the home state of Baby Boy M. on April 4, 2007; (ii) Wisconsin was *not* the home state of the child within 6 months before April 4, 2007; (iii) a court of another state *had* jurisdiction under the UCCJEA in that either Kansas or New Mexico was the home state of the child on April 4, 2007 and (iv) Kansas did *not* decline to exercise jurisdiction on the ground of forum non conveniens. As noted by another appellate court, home-state jurisdiction "trumps all other possible bases of jurisdiction in an initial child custody action" under the UCCJEA. *In re Brown*, 203 S.W.3d 888, 891 (Tex. App. 2006).

We conclude that whether or not an initial child custody had been commenced in Wisconsin, that state was unable to exercise jurisdiction substantially in conformity with the UCCJEA. Accordingly, the district court was not obliged to abstain from jurisdiction

under either K.S.A. 59-2127 or K.S.A. 38-1353. Although the district court did not assert jurisdiction based on this precise rationale, there was no need for mandatory abstention in Kansas to determine the issues of custody, parental rights, and adoption. See *In re Marriage of Bradley*, 282 Kan. 1, 8, 137 P.3d 1030 (2006).

### Did the District Court Abuse Its Discretion In Refusing to Decline Jurisdiction?

Even if the district court in Kansas was not obligated by statute to abstain from the assertion of jurisdiction, K.L. argues the court should have declined jurisdiction under K.S.A. 38-1354(a) because Kansas was an inconvenient forum and Wisconsin was the more appropriate forum. Indeed we note that the UCCJEA contemplates such a determination, and when jurisdiction is declined as inconvenient this may be determinative of jurisdiction in the other state. See K.S.A. 38-1348(a)(2); Wis Stat. § 822.21(b); *In re E.T.*, 36 Kan. App. 2d 56, 68, 137 P.3d 1035 (2006). We review a decision to exercise or decline jurisdiction under inconvenient forum principles for an abuse of discretion. *In re Adoption of Baby Girl B.*, 19 Kan. App. 2d at 288.

K.L. argues that the district court abused its discretion in finding Kansas was the most convenient forum. K.L. argues Wisconsin was convenient because of the following facts: (1) All witnesses able to testify as to K.L.'s ability to care for the child were in Wisconsin; (2) K.L.'s attempts to locate C.M. during the pregnancy were initiated from Wisconsin; (3) K.L.'s attempts to support C.M. during the pregnancy were made in Wisconsin; and (4) the records regarding the amount of support required by C.M. during the pregnancy were located in Wisconsin. K.L. also argues that all the relevant information regarding Baby Boy M.'s care was in New Mexico. Finally, K.L. argues that Kansas had no significant connection to Baby Boy M. or to evidence of his care, protection, training, or support because he was moved to New Mexico to live with his adoptive parents within a day of his birth.

The district court held that Kansas was not an inconvenient forum, relying on *In re Adoption of Baby Girl B.*, 19 Kan. App. 2d at 290-91. The district judge held:

"In [*In re Adoption of Baby Girl B*], the alleged convenient forum was Pennsylvania. And not all the facts are exactly the same, but the principles—the facts are sufficiently similar that I think the principles apply. And my—based on the rulings in that case, my conclusion is that jurisdiction is proper in this case, and that Wisconsin has no contact with—the other way. The child has no contact with Wisconsin to make it a convenient forum under any circumstances, which residence of a child, an infant, is the residence of mother unless the child has had—been in custody of his father. If we are to say, as I think was concluded in that case, that the mother had really not established a sufficient residence, that residence could be determined that nonetheless, that case Kansas was an appropriate—was a reason, appropriate jurisdiction if you conclude that there isn't any established state of residence.

"So the motion that is made to dismiss these proceedings on jurisdictional grounds, on grounds of noncompliance with the uniform child custody jurisdiction act, is going to be—that motion is denied for those reasons."

A district court may decline jurisdiction over an adoption proceeding if Kansas is an inconvenient forum and another state's court is more appropriate. K.S.A. 38-1354. In analyzing the relative convenience of forums, the district court must examine all relevant factors, including the following eight factors enumerated in K.S.A. 38-1354(b):

"(1) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;

"(2) the length of time the child has resided outside this state;

"(3) the distance between the court in this state and the court in the state that would assume jurisdiction;

"(4) the relative financial circumstances of the parties;

"(5) any agreement of the parties as to which state should assume jurisdiction;

"(6)the nature and location of the evidence required to resolve the pending litigation, including testimony of the child;

"(7) the ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;

"(8) the familiarity of the court of each state with the facts and issues in the pending litigation."

Here, the district court seems to have focused exclusively on the residence of the child rather than considering all relevant factors listed in the statute. Although it appears unlikely that a complete consideration of such factors might have supported a declination of jurisdiction, we are unable to endorse the district court's approach to this issue.

Concluding that the district court failed to observe the statutory procedure for its decision to retain jurisdiction under K.S.A. 38-1354, we hold that the court abused its discretion. See *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006) (abuse of discretion may be found if the trial court's decision fails to properly consider statutory standards). Accordingly, we reverse and vacate the court's determination of convenient forum and remand for compliance with the statutory procedure.

On remand, the district court is directed to conduct the proper analysis under K.S.A. 38-1354 to determine whether Kansas is the most appropriate forum for the issues raised by the parties. The analysis should include at a minimum the consideration of all statutory factors from the perspective of a detached observer. The perspective of one particular party should not dominate the analysis. *In re B.B.M.*, No. 91,959, unpublished opinion filed December 17, 2004, slip op. at 10.

### *Was There Sufficient Evidence to Support the Requisite Findings for Termination of K.L.'s Parental Rights?*

K.L. next challenges the factual basis for the termination of his parental rights, arguing the evidence was insufficient. Assuming that the district court on remand does not decline jurisdiction, we must address the merits of this challenge despite our remand for an inconvenient forum analysis, as it may otherwise be subject to endorsement or res judicata on remand. Because the standard for termination of parental rights in the district court is by clear and convincing evidence, we consider all of the evidence, viewed in the light most favorable to the adoptive parents, and determine whether we are convinced a rational factfinder could have found the determination to be highly probable. See *In re B.D.-Y.*, 286 Kan. 686, Syl. ¶ 4, 187 P.3d 594 (2008).

Within an adoption proceeding, K.S.A. 2007 Supp. 59-2136(h)(1) enables the court to order parental rights be terminated "upon a finding by clear and convincing evidence" of any of the following:

"(A) The father abandoned or neglected the child after having knowledge of the child's birth;

"(B) the father is unfit as a parent or incapable of giving consent;

"(C) the father has made no reasonable efforts to support or communicate with the child after having knowledge of the child's birth;

"(D) the father, after having knowledge of the pregnancy, failed without reasonable cause to provide support for the mother during the six months prior to the child's birth;

"(E) the father abandoned the mother after having knowledge of the pregnancy;

"(F) the birth of the child was the result of rape of the mother; or

"(G) the father was failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition."

Moreover, the statute expressly permits consideration of the best interests of the child:

"(2) In making a finding whether parental right shall be terminated under this subsection, the court may:

(A) Consider and weigh the best interest of the child; and

(B) disregard incidental visitations, contacts, communications or contributions." K.S.A. 2007 Supp. 59-2136(h)(2).

Examining the proceedings before the district court, we note that the journal entry contained no factual findings to support the termination of parental rights, but only a conclusion that "the parental rights of [C.M. and K.L.] be terminated based upon the Court's ruling after a full and complete hearing May 15, 2007." The transcript of the court's ruling consists of 15 pages summarizing the evidence. There is no mention of the clear and convincing evidence standard, and there is nothing characterized as a "finding."

In summarizing the evidence, the district court characterized abandonment as "a close question" and was unable to "find that abandonment was involved here." With regard to support, the district judge summarized the evidence by stating that "I'm not going to list every one of [a packet of receipts], but after going through each of them I find that they are not really helpful in proving anything that's material to the outcome of this case, not to say they're not relevant" and "how they can be characterized as being support, I've not been able to determine." With regard to contact, the court indicated that the records "confirm that [father] did [make a lot of phone calls]" and the evidence "clearly shows communication back and forth." The judge then criticized the father's

proposal for taking custody of the child and stated—as if in disbelief, "And yet, I'm to conclude from that that this could be a safe environment for this infant to be taken care of and raised?" Finally, the judge concluded as follows:

"All of the things that I have mentioned are not considered just separately, but as a whole to make up the whole picture. And I have concluded that from this evidence, that the request of the [adoptive parents] that I terminate the father's rights should be granted.

"The evidence shows that he has materially failed to exercise his role as parent in the ways discussed—shown in the evidence, and, in fact, in more details of what I have set out here in today's announcement conclusion of these proceedings.

"Mother has made a careful decision with a well planned course for her child so that her child—for their child, so this child would be reared in a good home and consistent with her religious faith—consistent with their religious faith as it's related to me. And so, looking at the best interest aspect of this, it appears to me that that result is in the best interest of the child."

Based upon our review of the transcript and journal entry of judgment, we must conclude that the district court failed to make any of the requisite findings to support a termination of K.L.'s parental rights, except an apparent finding as to the best interests of the child. K.S.A. 2007 Supp. 59-2136 clearly requires a finding by clear and convincing evidence of at least one of the seven statutory bases before parental rights be terminated; no such finding was made here, and even if we were to construe the judge's comments as implying some finding, the absence of language stating that a finding was made by clear and convincing evidence would render the court's decision unsupportable under the statute.

We recognize, however, that the statute as amended in 2006 permits the court to "consider and weigh the best interest of the child." K.S.A. 2007 Supp. 59-2136(h)(2). Because the district court found that the best interests of the child would be served by the termination of parental rights in order to enable the adoption, we must determine whether a finding in this regard is sufficient to support the termination of parental rights. A panel of our court has squarely addressed this question and concluded that the legislature did not intend that the best interests of the child could stand alone as a ground to terminate a natural parent's parental rights.

"The Kansas Adoption and Relinquishment Act, K.S.A. 59-2111 *et seq.*, is to be strictly construed in favor of maintaining the rights of natural parents. *In re Adoption of K.J.B.*, 265 Kan. 90, 95, 959 P.2d 853 (1998). The Kansas Legislature intended to expressly permit courts, in weighing decisions whether to terminate parental rights, to consider the best interests of the child as a factor but not as a stand-alone basis for terminating parental rights." *In re Adoption of D.D.H.*, 39 Kan. App. 2d 831, 835, 184 P.3d 967 (2008).

We believe the rationale and holding of that panel is sound, and we adopt it here in concluding the district court's finding regarding the child's best interests is insufficient to support the termination of K.L.'s parental rights. We note that the rationale is consistent with a recent decision of our Supreme Court addressing a parallel provision applicable in stepparent adoptions, *In re Adoption of G.L.V.*, 286 Kan. 1034, 190 P.3d 245 (2008). Our Supreme Court observed that the best interests language added to the statute in 2006 "does not, however, permit a court to override the [mandatory consent] requirement in [the statute]." 286 Kan. at 1064-65. Indeed, the best interests consideration merely "provides the court with additional discretionary powers to consider the best interests of the child in denying the adoption—even where a natural parent has not assumed the duties of a parent as articulated by this court— for unique reasons." 286 Kan. at 1064. According to the court, the legislature has made a determination that the best interests of a child in a stepparent adoption is served by fostering the natural parent-child relationship where the parent has assumed his or her parental obligations. 286 Kan. at 1064. We do not perceive any reason to distinguish this best interests policy where the child is subject to an adoption outside family bounds.

Because the district court failed to make the requisite statutory findings to support a termination of parental rights by clear and convincing evidence, and because the court's finding as to the child's best interests is insufficient to support the decision, we have no alternative other than to reverse and remand for further proceedings.

### *Directions for Remand*

The proceedings on remand are hereby ordered to be expedited and should include, at a minimum, a reconsideration of the con-

venient forum issue under K.S.A. 38-1354 and a new evidentiary hearing before a different district judge on the merits of the issues framed by all parties. We express no opinion on the merits to be addressed on remand, other than to reiterate the long-standing policy of our state:

"[T]he policy of th[is] state proceeds on the theory that [children's] welfare can best be attained by leaving them in the custody of their parents and seeing to it that the parents' right thereto is not infringed upon or denied." *In re Guardianship of Williams*, 254 Kan. 814, 822, 869 P.2d 661 (1994).

Reversed and remanded with directions.