NOT DESIGNATED FOR PUBLICATION

No. 118,968

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

THE BANK OF NEW YORK MELLON, f/k/a THE BANK OF NEW YORK, AS TRUSTEE FOR THE
CERTIFICATE HOLDERS OF CWABS, INC., et al.,
*Plaintiffs*,

v.

DONALD STEBBINS, *Appellee*,
CHRISTINE STEBBINS and BLUE VALLEY RIDING HOMES,
*Defendants,*

HEARTH and HOME, LLC, and JOHNSON COUNTY COURT TRUSTEE,
*Appellees*,

and

CHERRY PARK PROPERTIES, LLC,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; PAUL C. GURNEY, judge. Opinion filed March 1, 2019.
Affirmed.

*Mark A. Corder*, of Olathe, for appellant Cherry Park.

*Rick Davis*, of Rick Davis Legal, of Overland Park, for appellee Donald Stebbins.

Before BRUNS, P.J., BUSER and SCHROEDER, JJ.

BUSER, J.: This is an appeal by Cherry Park Properties, LLC (Cherry Park) of the
Johnson County District Court's ruling in a mortgage foreclosure proceeding that Cherry
Park had no redemption rights or interest in the mortgaged property. Upon our review of

the parties' briefs and the record on appeal, we find no error in the district court's judgment. Accordingly, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The material facts are not disputed. In 2006, Donald and Christine Stebbins, a married couple, executed a note and mortgage with First Residential Mortgage Network on their residence in Overland Park. Later, the Bank of New York Mellon (BNYM) became the note holder and mortgage owner. On November 24, 2014, BNYM filed a petition to foreclose on the mortgage. The foreclosure case was assigned to Johnson County District Judge Paul C. Gurney of Division 11.

While the foreclosure proceedings were pending, Donald and Christine were granted a divorce. The divorce case was assigned to Johnson County District Judge Christina Dunn Gyllenborg of Division 9. The initial journal entry and decree of divorce, dated July 27, 2015, noted the property was currently involved in a foreclosure action, but Donald wanted to refinance the residence and redeem the property. The initial divorce decree provided: "The Court shall retain jurisdiction of the parties' marital residence should need arise to resolve any disputes so not ordered [*sic*] herein." This included any division of equity or judgment on the foreclosure. Of note, although this journal entry was dated July 27, 2015, it inexplicably was not filed until more than a year later—on November 7, 2016.

On September 30, 2016, Judge Gyllenborg finalized the couple's mediated agreement and decree of divorce which resolved the remaining issues regarding the property. This journal entry was dated September 30, 2016. Of note, it was filed about a month later, on November, 7, 2016—17 minutes after the initial journal entry, dated July 27, 2015, was filed.

2

The September 30, 2016 journal entry provided that the property should be listed for sale but allowed Christine to remain in the residence until November 30, 2016. Effective December 1, 2016, Donald would have exclusive possession of the home and "*shall be awarded any and all interest in the property at such time by virtue of the provisions of this agreement.*" (Emphasis added.) Donald was also entitled to any and all proceeds from the sale of the property and was responsible for the mortgage. Moreover, the journal entry ordered Christine to cooperate with any financing requirements and "[a]t the time of refinancing and removal of [Christine] as an obligated party on the note and mortgage, [*Donald*] *shall be awarded the property free and clear of any interest of* [*Christine*]." Of note, an identical copy of the initial journal entry and decree of divorce, dated July 27, 2015, was filed two days after the September 30, 2016 journal entry was filed. The record is silent regarding the reason, if any, for this duplicate filing.

The next year, on July 21, 2017, Judge Gurney entered judgment in the foreclosure action in favor of BNYM and ordered the property to be sold by the sheriff. Because less than one-third of the original debt had been paid, the district court provided for a three-month redemption period to begin on the date of the sheriff's sale. Upon the failure of the Donald and Christine to pay the judgment amount within 14 days, Judge Gurney advised he would issue an order of sale. The journal entry also provided that "upon the failure of the Defendants or any assignee of redemption rights of the Defendants to redeem in accordance with law, then each and all of the Defendants shall forever be barred and foreclosed from all right, title, interest, lien or claim in, on, or to the Property."

Donald and Christine did not pay the judgment within 14 days, and the district court issued an order of sale to the Johnson County sheriff on October 5, 2017. Fifteen days later, on October 20, 2017, Christine assigned her claimed redemption rights to the property to Cherry Park. On November 2, 2017, Hearth & Home, LLC purchased the property at the foreclosure sale and the district court confirmed the sale. On November 8,

2017, Cherry Park evidently entered its appearance indicating that it purchased Christine's redemption rights and was a successor in interest.

On December 4, 2017, Donald filed a motion in the mortgage foreclosure proceeding to determine redemption rights. In the motion, Donald objected to Cherry Park's assignment of the redemption rights from Christine. Donald argued that Christine no longer had an interest in the property; thus, she could not assign any redemption rights to Cherry Park.

In response, Cherry Park argued that Judge Gyllenborg should hear the motion because the journal entries in the divorce proceedings indicated that she retained jurisdiction over disposition of the property. Cherry Park also argued that Christine should have equal redemption rights with Donald because she was a coowner of the home and nothing in the divorce proceedings indicated that Christine unconditionally gave up her redemption rights.

Judge Gurney held a hearing on the motion and took the matter under advisement. On January 4, 2018, Judge Gurney filed a four-page order ruling on David's motion to determine redemption rights. In factual findings, Judge Gurney referenced Judge Gyllenborg's September 30, 2016 journal entry which gave Donald exclusive possession and access to the property effective November 30, 2016, when Christine was to vacate the property. Moreover, Judge Gurney highlighted Judge Gyllenborg's ruling that "[Donald] shall be awarded any and all interest in the property at that time."

In resolving the matter, Judge Gurney incorporated Judge Gyllenborg's findings into his own factual findings and concluded: "The date [Christine] was to vacate the property and award [Donald] any and all interest in the property was approximately eleven months before she assigned her redemption rights to Cherry Park."

4

In analyzing the legal question, Judge Gurney cited with emphasis K.S.A. 60-2414(h), which provides that "[t]he rights of the defendant owner in relation to redemption may be assigned or transferred, and the *assignee or transferee shall have the same right of redemption as the defendant owner*." Judge Gurney explained:

"[Christine] did not have any of the rights that accompany a right of redemption. She had no right to possession of the property . . . and she had no right to any of the rents, income or profits. [Christine] had no right of redemption. When she assigned 'any and all rights of redemption owned by or available to [Christine] pursuant to the laws of the State of Kansas' to Cherry Park, she assigned nothing."

Judge Gurney concluded: "Pursuant to K.S.A. 60-257, the Court declares that [Christine] had no redemption rights, and thus, Cherry Park has no interest in the Property."

Cherry Park appeals from Judge Gurney's order.

## INTRODUCTION

On appeal, Cherry Park presents two issues for our consideration: First, did Judge Gurney

"handling the foreclosure proceeding have jurisdiction to make a determination as to the relative rights of the homeowners in the foreclosure proceeding instead of referring that issue to the Division (Court No. 9) handling the divorce proceeding (wherein the rights of the parties in and to the subject real property were determined)"?

Second, "was the District Court correct in its determination to the effect that [Christine] had no redemption rights in and to the subject real property?" We will consider these two issues individually.

5

As Cherry Park frames the first issue: "Cherry Park avers that the district court in the foreclosure action did not have jurisdiction to determine the relative rights of [Christine and Donald]." In particular, Cherry Park contends that

"since the divorce court had jurisdiction to determine the relative rights of [Christine and Donald] in and to the subject real property (indeed, as to all of the marital assets and liabilities), the question of what rights the parties had in and to the subject real property should have been referred to the divorce court."

Our standard of review provides: "Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited." *In re Adoption of Baby Boy M.*, 40 Kan. App. 2d 551, 554, 193 P.3d 520 (2008).

At the outset, Cherry Park does not favor us with any statutory or caselaw precedent in support of its claim that a Kansas district judge presiding over a mortgage foreclosure proceeding does not have jurisdiction to rule on a redemption matter when another Kansas district court judge has issued a journal entry and decree of divorce with regard to the division of property. Moreover, we are not aware of any such precedent.

There is, however, contrary precedent. K.S.A. 20-301 grants all Kansas district courts "general original jurisdiction of all matters, both civil and criminal, unless otherwise provided by law." *Dipman v. Dipman*, 6 Kan. App. 2d 844, 845, 635 P.2d 1279 (1981) ("We begin with the fundamental proposition that the Kansas district court has been granted all general original jurisdiction not otherwise provided by law."). Additionally, K.S.A. 20-302 provides that a Kansas district judge "shall have and exercise the full judicial power and authority of a district court." Quite simply, under fundamental Kansas law, both Judge Gurney and Judge Gyllenborg had the legal power and authority to preside over the mortgage foreclosure proceedings and divorce

6

proceedings assigned to their respective judicial divisions of the Johnson County District Court. Cherry Park's jurisdictional argument is without merit.

ASSIGNMENT OF REDEMPTION RIGHTS

For its second issue on appeal, Cherry Park argues that it validly assumed Christine's right to redeem the property and filed a notice of interest in the property prior to the confirmation of the sale at foreclosure. Cherry Park also asserts the filing dates of the three journal entries indicate that Christine still rightfully holds some interest in the property because the last filed divorce decree did not fully divest Christine of her interest in the property.

Donald counters that the dates on the journal entries control and the filing dates are irrelevant. He contends that by September 30, 2016—the latest dated journal entry— Judge Gyllenborg had resolved the property issue by awarding all rights and interest in the property to Donald.

The interpretation and legal effect of written instruments are matters of law and an appellate court exercises unlimited review. *Born v. Born*, 304 Kan. 542, 554, 374 P.3d 624 (2016). Similarly, interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015).

Critical to Cherry Park's argument is its assertion that the controlling journal entry in the divorce proceeding was the last-filed order which was a duplicate of the initial journal entry and decree of divorce dated July 27, 2015, but filed on November 9, 2016. In this journal entry, Judge Gyllenborg retained jurisdiction to finalize the disposition of the marital residence. But Cherry Park discounts the journal entry and decree of divorce dated 14 months later, on September 30, 2016 (which was filed on November 7, 2016),

7

which awarded Donald "the property free and clear of any interest of [Christine]" effective December 1, 2016.

In short, Cherry Park argues that the duplicate July 27, 2015 journal entry filed on November 9, 2016, supersedes the September 30, 2016 journal entry filed on November 7, 2016. As Cherry Park views it—despite the dates on the journal entries—the *last-filed* not the *last-dated* journal entry controls, which means that Judge Gyllenborg had not yet finalized the disposition of the property and Christine still had an interest in it.

As properly determined by Judge Gurney, K.S.A. 2017 Supp. 60-2414(h) grants a property owner the ability to assign or transfer the right to redeem property and such assignee or transferee shall have the same right to redeem as the defendant owner. The issue before us is whether there was a valid transfer of redemption rights by Christine to Cherry Park.

The answer to this question hinges on the timing of the three journal entries and the date when Christine attempted to transfer her redemption rights. Generally, the "effective date of a journal entry is when it is signed by the trial judge and filed with the clerk of the district court." *Valadez v. Emmis Communications*, 290 Kan. 472, 482, 229 P.3d 389 (2010).

In comparing the handwritten dates of the three documents, the dates of filing, their contents, and the parties' compliance with the directives contained in the journal entries, it is obvious that Donald, Christine, Judge Gyllenborg, and Judge Gurney all considered the September 30, 2016 journal entry to be the final decree of divorce which finally determined the disposition of the property by awarding all rights and interest to Donald.

8

The first journal entry stated that it was prepared in order to memorialize the results of the July 27, 2015 divorce hearing. It contained the handwritten date of July 27, 2015. This journal entry indicated that Donald desired to refinance the home and obtain a loan modification. It provided that in the event Donald was unable to refinance the existing mortgage, the couple would sell the house and Christine would vacate it July 1, 2016. The journal entry stated that Judge Gyllenborg would retain jurisdiction over the property should any dispute arise. This included any disputes as to the division of equity or judgment on the foreclosure. The journal entry also set forth a walkthrough plan to divide the family memorabilia. Finally, Judge Gyllenborg ordered Donald to pay child support arrearages, divided bills from 2013 and 2014, and accepted the agreed-upon parenting plan.

The second journal entry, although signed and filed on the same date as the first journal entry—November 7, 2016—memorialized a hearing which occurred on September 30, 2016. It contained the handwritten date of September 30, 2016. This journal entry stated that the parties had resolved all remaining issues regarding the marital residence. It provided that the home would be listed for sale immediately. Christine would vacate the home by November 30, 2016, after which Donald would have exclusive possession of the home. The journal entry further provided that Donald "shall be awarded any and all interest in the property at such time by virtue of the provisions of this agreement." Additionally, Donald was entitled to any and all proceeds from the sale of the property and was now responsible for the mortgage. It also ordered Christine to cooperate with any financing requirements and "at the time of refinancing and removal of [Christine] as an obligated party on the note and mortgage, [Donald] shall be awarded the property free and clear of any interest of [Christine]." Of note, this journal entry also ordered Donald to pay a higher child support arrearage amount and provided additional directions for dividing the remaining family memorabilia. Finally, in this second journal entry, Judge Gyllenborg repeatedly referenced the initial journal entry and decree of divorce.

9

From the contents of the September 30, 2016 journal entry, it is apparent that it was written to memorialize and resolve all outstanding matters referenced in the initial July 27, 2015 journal entry and decree of divorce. This understanding is further evidenced by the contents of the third journal entry.

The third and final journal entry in the divorce proceeding was filed two days after the first two journal entries. Inexplicably, the third journal entry is an identical replica of the first journal entry and discusses the same matters that came before the district court at the hearing on July 27, 2015. The third journal entry references past dates and events that were no longer relevant to Donald or Christine as of the September 30, 2016 hearing, which was memorialized in the second journal entry.

Additionally, at the hearing on the motion to determine redemption rights, Donald's attorney informed Judge Gurney that the parties at the divorce hearing miscommunicated with each other about who would prepare the journal entry. In short, the third journal entry was filed by mistake. The other parties at the motion hearing did not present any evidence to contradict this assertion.

Moreover, by their conduct, Donald and Christine complied with the provisions of the September 30, 2016 journal entry because Christine moved out of the residence on the date provided and Donald was paying the greater amount of child support. All things considered, we are convinced that the second journal entry, dated September 30, 2016, is the final journal entry and decree of divorce.

Given our holding that the September 30, 2016 journal entry and decree of divorce is the final controlling document in the divorce proceeding, Donald was awarded all interest in the property effective November 30, 2016, when Christine agreed to vacate the premises and Donald had exclusive possession of the residence. Yet, Christine purported to assign her redemption rights to Cherry Park on October 20, 2017—some 11 months

10

later—even though at that time she had no interest in the property and, therefore, had no redemption rights to assign.

Accordingly, we can find no error in Judge Gurney's legal conclusion that "when [Christine] assigned 'any and all rights of redemption owned by or available to [Christine] pursuant to the laws of the State of Kansas' to Cherry Park, she assigned nothing." We agree. Cherry Park has no interest in the property.

Finally, Donald briefs procedural reasons why he claims that we should not review Cherry Park's appeal. Given our ruling on the merits of this matter, we decline to address his procedural arguments.

Affirmed.