No. 107,383

In the Matter of the Adoption of H.C.H., a Minor Child.
(304 P.3d 1271)

Opinion filed July 5, 2013.

*Robert A. Martin,* of Norton, Wasserman, Jones & Kelly, L.L.C., of Salina, argued the cause and was on the briefs for appellant stepfather.

*Lee A. Legleiter,* of Hampton & Royce, L.C., of Salina, argued the cause, and *Russel B. Prophet,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal arises from a district court's ruling that Kansas courts do not have jurisdiction over this stepparent adoption because a Mississippi court had entered a child-custody order involving the child approximately 12 years earlier and had not relinquished jurisdiction. The district court also determined that a

Mississippi court is a more appropriate forum to hear the adoption. The stepfather appealed, arguing the district court failed to apply K.S.A. 59-2127, which is the jurisdiction provision of the Kansas Adoption and Relinquishment Act (KARA), K.S.A. 59-2111 *et seq.* He asserted that under that provision a Kansas court could and should determine the Mississippi court does not have continuing jurisdiction over the child's custody and does not have jurisdiction over this adoption proceeding. The Court of Appeals rejected these arguments and affirmed, holding that K.S.A. 59-2127 conflicts with provisions of the Uniform Child-Custody Jurisdiction and Enforcement Act (UCCJEA), K.S.A. 2012 Supp. 23-37,101 *et seq.*, and that the UCCJEA, 9 Pt. 1A U.L.A. § 101 *et seq.* (1999), controls over the conflicting KARA jurisdictional provision. Under the UCCJEA provision, only a Mississippi court can determine it no longer has continuing jurisdiction to modify the child-custody order.

On review of the Court of Appeals' decision, we conclude the more specific adoption jurisdiction provision in the KARA, K.S.A. 59-2127, controls the determination of whether a Kansas court has jurisdiction over an adoption and the UCCJEA applies to this determination only to the extent K.S.A. 59-2127 incorporates its provisions. Under K.S.A. 59-2127, a Kansas court can and should determine if the Mississippi court has continuing jurisdiction over the child-custody order or decree or, alternatively, if it has jurisdiction over this adoption. We also conclude the district court erred in failing to apply K.S.A. 59-2127 and in determining Mississippi is a more convenient forum for the adoption proceeding. Because we cannot declare these errors to be harmless, we reverse and remand this case, directing the district court to make the findings required by K.S.A. 59-2127.

### FACTS AND PROCEDURAL BACKGROUND

H.C.H. (Child) was born in Mississippi in 1997 to C.H. (Father) and C.M. (Mother). At the time of the birth, Mother and Father were married, but they divorced in 1999. The Chancery Court for the First Judicial District of Hinds County, Mississippi, granted the divorce and entered a child-custody order; the court granted

residential custody to Mother and allowed for supervised visitation by Father.

In 2002, Mother and Child moved to Saline County, where they have resided since that date. In 2010, Mother married G.M. (Stepfather), a Kansas resident.

On October 3, 2011, Stepfather filed a petition for the stepparent adoption of Child in Saline County District Court. See K.S.A. 59-2112(d) (defining "stepparent adoption" as "the adoption of a minor child by the spouse of a parent with the consent of that parent"). In his verified petition, Stepfather alleged he was a resident of Saline County, Kansas, "and that is the basis for venue in this Court. The child additionally resides in Saline County, Kansas with her mother." Stepfather requested termination of Father's parental rights and a determination that Father's "consent is not required as permitted by K.S.A. [2012] Supp. 59-2136 because the natural father has failed or refused to assume the duties of a parent for two (2) consecutive years preceding the filing of the Petition for Adoption." See K.S.A. 2012 Supp. 59-2136(d) ("In a stepparent adoption, . . . the consent of [the natural] father must be given to the adoption unless such father has failed or refused to assume the duties of a parent for two consecutive years next preceding the filing of the petition for adoption"); K.S.A. 2012 Supp. 59-2136(e) ("Where appropriate, the request to terminate parental rights may be contained in a petition for adoption.").

Father filed an answer objecting to the adoption and the termination of his parental rights and asserting that his consent was necessary. He did not raise the defense that the court lacked personal jurisdiction over him. See K.S.A. 2012 Supp. 23-37,201(c) ("Physical presence of, or personal jurisdiction over, a party or a child is not necessary or sufficient to make a child-custody determination."). He did, however, challenge the court's subject matter jurisdiction over the adoption and alleged the Chancery Court of Hinds County, Mississippi, has exclusive, continuing jurisdiction. Additionally, both parties to this appeal indicate that Father filed a motion for contempt and modification of the custody order in the Mississippi court, although there is no factual support for this in the record on appeal.

Mother consented to the adoption, and after Father filed an answer asserting his consent was necessary, mother filed an affidavit. In the affidavit, she stated she and Child had resided in Kansas since August 2002; they had not been residents of the State of Mississippi for over 9 years; Father "was well aware" of their move to Kansas; and Father had no contact with Child since 2002, except to mail a book, statue, card, and rosary to Child "shortly after" December 2007. She further stated that Stepfather "is a resident of the State of Kansas and to my knowledge has been such for his entire life."

After these filings, the Saline County District Court requested briefs from the parties regarding jurisdiction and, after hearing arguments, declined to exercise jurisdiction. The court reasoned that "adoption proceedings are custody matters subject to the [Uniform Child Custody Jurisdiction Act (UCCJA), K.S.A. 38-1301 *et seq.*,] and Kansas child custody law." For support, the court cited *In re Adoption of Baby Girl B.*, 19 Kan. App. 2d 283, 867 P.2d 1074 (applying UCCJA to determine jurisdiction in adoption case), *rev. denied* 255 Kan. 1001 (1994), and *In re L.C.*, 18 Kan. App. 2d 627, 857 P.2d 1375 (1993) (applying UCCJA to determine jurisdiction in termination of parental rights case). The court then found that the Mississippi Chancery Court had established that Mississippi was the child's "home state . . . and no Kansas Court may exercise any jurisdiction over [the] potential adoption until the Mississippi court transfers venue to Kansas in accordance with K.S.A. 38-1353." Finding no evidence that the Mississippi court had "divested itself of jurisdiction," the district court determined "all matters regarding [Child] remain under the sole jurisdiction of the Mississippi court." In addition, the district court concluded "Saline County, Kansas is not a more convenient forum for this litigation." Consequently, the district court dismissed Stepfather's petition for adoption.

## Court of Appeals' Decision

Stepfather appealed to the Court of Appeals, alleging the district court's reliance on the UCCJA was in error because the UCCJA is no longer in effect in Kansas and Kansas courts have jurisdiction

over the adoption under the jurisdiction provision of the KARA, K.S.A. 59-2127. The Court of Appeals rejected these arguments and affirmed the district court's decision in *In re Adoption of H.C.H.*, No. 107,383, 2012 WL 2926169 (Kan. App. 2012) (unpublished opinion).

The Court of Appeals recognized that the KARA includes provisions regarding jurisdiction but concluded those provisions are "inconsistent with the workings of" the UCCJEA, which has replaced the UCCJA cited by the district court. The Court of Appeals concluded that jurisdiction should be determined by the UCCJEA. *Adoption of H.C.H.*, 2012 WL 2926169, at *5.

In discussing controlling provisions of the UCCJEA, the Court of Appeals began its analysis with K.S.A. 2012 Supp. 23-37,206, which is a recodification of the statute cited by the district court, K.S.A. 38-1353. K.S.A. 2012 Supp. 23-37,206, which addresses jurisdiction when there are simultaneous proceedings in two states, is Kansas' codification of UCCJEA § 206. See 9 Pt. 1A U.L.A. § 206, pp. 680-81 (1999). Our Kansas statute was interpreted by the Court of Appeals as requiring a determination of whether a custody proceeding had been commenced in another state having jurisdiction in conformity with the UCCJEA. *Adoption of H.C.H.*, 2012 WL 2926169, at *2.

The Court of Appeals then dismissed Stepfather's arguments that Mississippi no longer has exclusive, continuing jurisdiction because it has not been Child's home state since 2002. The court discussed K.S.A. 2012 Supp. 23-37,203 (UCCJEA § 203), which addresses jurisdiction to modify child-custody determinations, and noted Mississippi's exclusive jurisdiction would be lost only if a Mississippi court were to make the determination it no longer has exclusive, continuing jurisdiction. Citing Mississippi's statute that codified UCCJEA § 202, the court concluded: (1) The Mississippi court has not determined it no longer has jurisdiction and (2) Mississippi could exercise continuing jurisdiction because Father lives in Mississippi. *Adoption of H.C.H.*, 2012 WL 2926169, at *3-4; see K.S.A. 2012 Supp. 23-37,202; Miss. Code Ann. § 93-27-202 (Rev. 2004; 2012 Supp.).

The Court of Appeals then discussed the conflict between (1) the UCCJEA, which requires a Mississippi court and only a Mississippi court to make the determination that Mississippi no longer has exclusive, continuing jurisdiction and (2) K.S.A. 59-2127(b)(1)(A), the jurisdiction statute in the KARA, which allows a Kansas court to determine whether a court in another state, such as Mississippi, does not have continuing jurisdiction. *Adoption of H.C.H.*, 2012 WL 2926169, at *5. The Court of Appeals determined this conflict should be reconciled by giving priority to the provisions of the UCCJEA because the policy of the UCCJEA is to promote uniformity. The Court of Appeals then held "the Kansas trial court was not authorized to determine if the Mississippi court which made the initial child-custody determination retained exclusive continuing jurisdiction." *Adoption of H.C.H.*, 2012 WL 2926169, at *5. Accordingly, the Court of Appeals concluded that Kansas lacked jurisdiction to modify the Mississippi custody order under the UCCJEA. *Adoption of H.C.H.*, 2012 WL 2926169, at *4-6.

Stepfather timely appealed the Court of Appeals' decision. This court granted Stepfather's petition for review and has jurisdiction under K.S.A. 20-3018(b).

### STANDARD OF REVIEW AND RULES OF STATUTORY INTERPRETATION

The focus of this appeal is a question of law regarding whether the Saline County District Court had subject matter jurisdiction over this adoption proceeding. Adoption was not recognized at common law, and subject matter jurisdiction over such a proceeding is created by statute. *In re Adoption of I.M.*, 48 Kan. App. 2d 343, 344-45, 288 P.3d 864 (2012); *In re Application to Adopt H.B.S.C.*, 28 Kan. App. 2d 191, 196-97, 12 P.3d 916 (2000). Consequently, the determination of subject matter jurisdiction over this adoption proceeding requires the interpretation and application of statutes and presents a question of law over which this court exercises unlimited review. *In re Adoption of X.J.A.*, 284 Kan. 853, 862, 166 P.3d 396 (2007); *In re Adoption of Baby Boy M.*, 40 Kan. App. 2d 551, 554-55, 193 P.3d 520 (2008).

Our interpretation of statutes is guided by several well-established rules. The fundamental rule is that " 'the intent of the legislature governs if that intent can be ascertained.' " *In re Adoption of G.L.V.*, 286 Kan. 1034, 1040, 190 P.3d 245 (2008). " 'The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted.' " 286 Kan. at 1040-41. If a statute is plain and unambiguous, there is no need to resort to statutory construction and this court will neither speculate regarding legislative intent nor read the statute to add something not readily found in it. Where there is ambiguity, a court may use legislative history, canons of construction, or other background considerations to construe the legislature's intent. *In re Adoption of A.A.T.*, 287 Kan. 590, 627, 196 P.3d 1180 (2008).

As we will more fully discuss, the statutes at issue in this case are ambiguous in several respects, leading us to use legislative history, canons of construction, and other considerations in our analysis. These ambiguities are made apparent when one attempts to apply the rationale of the district court and the Court of Appeals and apply the various acts—the KARA, the UCCJA, and the UCCJEA.

## Interplay of KARA, UCCJA, and UCCJEA

Generally, adoption proceedings in Kansas are governed by the KARA. See *In re Adoption of J.M.D.*, 293 Kan. 153, 159, 260 P.3d 1196 (2011). At the time of the decision in *Adoption of Baby Girl B.*, the decision the district court in this case relied upon as authority for using the UCCJA to determine jurisdiction, the KARA only addressed jurisdiction in one type of adoption situation—an agency adoption—even though it recognized four types of adoptions—adult adoption, agency adoption, stepparent adoption, and independent adoption. See K.S.A. 59-2112(a)-(d) (defining types of adoption); K.S.A. 1993 Supp. 59-2127 (cited and discussed in *Adoption of Baby Girl B.*); L. 2000, ch. 171, sec. 75 (repealing provisions of K.S.A. 59-2127 specific to jurisdiction in only agency adoptions); *Adoption of Baby Girl B.*, 19 Kan. App. 2d at 286 (the KARA, specifically K.S.A. 1993 Supp. 59-2127, "does not include

a jurisdictional provision for independent adoptions, although one is provided for agency adoptions.").

Because the KARA provided no basis for determining jurisdiction in independent or stepparent adoptions, the *Adoption of Baby Girl B.* court looked to the UCCJA for direction. 19 Kan. App. 2d at 286-87. The court reasoned that adoptions "inherently determine custody issues" and an order of adoption "will terminate the natural father's parental rights, which for him will be the ultimate and final custody determination." *Adoption of Baby Girl B.,* 19 Kan. App. 2d at 287. Because the UCCJA governed jurisdiction in matters of custody, the court determined the provisions of that Act, as adopted in Kansas, could be used to determine jurisdiction in nonagency adoption cases. *Adoption of Baby Girl B.,* 19 Kan. App. 2d at 287. In essence, the court filled the void left by the lack of any jurisdictional statute relating to independent adoptions with the Act that came closest to addressing the subject.

In this case, the district court adopted this rationale, citing *Adoption of Baby Girl B.* and holding that Kansas courts look to the UCCJA to determine jurisdiction in stepparent adoption proceedings. In doing so, the district court failed to account for three significant changes in the law regarding jurisdiction in adoption cases that occurred in the 2000 legislative session, 6 years after *Adoption of Baby Girl B.* was decided. All of these changes occurred in the same legislation, House Substitute for S.B. 150. This legislation was passed after several separate bills were consolidated into one package and additional provisions were added by the House Committee of the Whole and in a conference committee. See L. 2000, ch. 171; 2000 H.B. 202; 2000 H. Sub. S.B. 150; 2000 Supp. Note on H. Sub. S.B. 150.

One of those changes was the repeal of our state's version of the UCCJA. L. 2000, ch. 171, sec. 84. Hence, as Stepfather points out, the district court misspoke when referring to the UCCJA several years after its repeal. The extent of that reliance, if any, appears to be limited, however. Although the court referred to the UCCJA by title, it cited to K.S.A. 38-1353, which was a provision of the UCCJEA, not the UCCJA. And, in the second significant change brought about by the 2000 legislation, the legislature adopted the

UCCJEA. L. 2000, ch. 171, secs. 31-72. The third change was the repeal of the version of K.S.A. 59-2127 (Furse 1994) that addressed jurisdiction only in the circumstance of an agency adoption and the enactment of the current version that is not restricted to just agency adoptions as was the previous statute. See L. 2000, ch. 171, sec. 75.

K.S.A. 59-2127, as amended in 2000, is a word-for-word adoption of two subsections of the jurisdiction provision in the Uniform Adoption Act (UAA), 9 Pt. 1A U.L.A. § 1-101 *et seq.* (1999), specifically UAA § 3-101. The UAA jurisdiction provision was adopted by the National Conference of Commissioners on Uniform State Laws in 1994, following growing criticism of cases, including *Adoption of Baby Girl B.*, which had applied the UCCJA to determinations of jurisdiction in adoption proceedings. See Hollinger, *The Uniform Adoption Act: Reporter's Ruminations*, 30 Fam. L.Q. 345, 370 n.75 (1996) (criticizing *Adoption of Baby Girl B.'s* "convoluted analyses"); Kay, *Adoption in the Conflict of Laws: The U.A.A., Not the U.C.C.J.A., Is the Answer*, 84 Cal. L. Rev. 703, 727 n.107, 728 (1996) (criticizing the "faulty reasoning" of *Adoption of Baby Girl B.* and other cases and courts' "overbroad interpretation" of the UCCJA as applying to adoption cases). The Uniform Law Commissioners and others also recognized that the UCCJA did not fit well in an adoption context. Hollinger, 30 Fam. L.Q. at 368; see Kay, 84 Cal. L. Rev. at 715 ("The structure of the UCCJA was designed to fit the fact pattern of the typical interstate child custody dispute in a divorce case. It does not fit the fact pattern of the typical interstate adoption case.").

Consequently, in 1994, the Uniform Law Commissioners adopted a jurisdiction provision, specifically UAA § 3-101, 9 Pt. 1A U.L.A. § 3-101, pp. 67-68 (1999), along with other revisions to the UAA. UAA § 3-101 "generally follows the subject matter jurisdictional bases chosen by the UCCJA, but with modifications . . . ." Kay, 84 Cal. L. Rev. at 744-45. As explained by the UAA reporter, "[t]he UAA modifies the UCCJA to take account of the distinctive jurisdictional issues raised by adoptions of infants and by stepparent and other intra family adoptions that occur after custody or visitation orders have been entered by courts in different states."

Hollinger, 30 Fam. L.Q. at 368. "[T]he UAA's goal for adoption proceedings is to have them heard in the forum with the closest connections to, and the most substantial evidence about, the proposed adoptive family." Hollinger, 30 Fam. L.Q. at 369; see Kay, 84 Cal. L. Rev. at 745-49 (comparing UAA provisions to UCCJA counterparts).

UAA § 3-101 consists of three subsections. Subsection (a), which is divided into five subparts, defines when a court has jurisdiction over an adoption proceeding. In part, "the UAA changes the UCCJA's basic 'home state' provision, to include the state in which a minor child has lived with a birth parent or a prospective adoptive parent for the requisite six or more consecutive months or, if an infant, since shortly after birth." Hollinger, 30 Fam. L.Q. at 370.

Subsections (b) and (c) of UAA § 3-101 limit jurisdiction by specifying circumstances in which a court may not exercise jurisdiction over the adoption. Subsection (b) applies when, at the time the adoption petition is filed, a court in another state has a pending custody or adoption proceeding involving the child. And subsection (c) applies if a court in another state had previously issued a custody order involving the child, unless one of two exceptions applies. While both subsections (b) or (c) give priority to the proceeding commenced first, neither absolutely prohibits a court in the second forum from exercising jurisdiction. Instead, both subsections define the circumstances in which jurisdiction can be exercised by the second state. While subsections (b) and (c) have counterparts in the UCCJA and UCCJEA, they differ from those counterparts.

Although the goal of the Uniform Law Commissioners was to provide distinct jurisdictional provisions in adoption cases even though there is a custody component in the proceeding, that goal was not fully accomplished in Kansas. The Kansas Legislature did not adopt subsection (a) of UAA § 3-101, the provision defining when a court does have jurisdiction, even though it adopted subsections (b) and (c), the provisions limiting when a court cannot exercise that jurisdiction. Compare L. 2000, ch. 171, sec. 75 to UAA § 3-101. The distinction between the UAA and UCCJEA envisioned by the Uniform Law Commissioners was further eroded when the Kansas Legislature did not adopt all of UCCJEA § 103,

9 Pt. 1A U.L.A. § 103, p. 660 (1999), which states in part that "[t]his act does not govern an adoption proceeding . . . ." See K.S.A. 2012 Supp. 23-37,103 ("This act does not govern a proceeding pertaining to the authorization of emergency medical care for a child."); see also 1 Elrod & Buchele, Kansas Law and Practice, Kansas Family Law § 6.31, p. 366 (2012-13 Supp.) (UCCJEA generally does not apply to adoption proceedings, but it has been applied in Kansas).

The resulting jurisdiction statute in the KARA reads:

"(a) A court of this state may not exercise jurisdiction over a proceeding for adoption of a minor if at the time the petition for adoption is filed a proceeding concerning the custody or adoption of the minor is pending in a court of another state exercising jurisdiction substantially in conformity with the uniform child custody jurisdiction act, or the uniform child custody jurisdiction and enforcement act, or this act unless the proceeding is stayed by the court of the other state.

"(b) If a court of another state has issued a decree or order concerning the custody of a minor who may be the subject of a proceeding for adoption in this state, a court of this state may not exercise jurisdiction over a proceeding for adoption of the minor unless:

(1) The court of this state finds that the court of the state which issued the decree or order:

(A) Does not have continuing jurisdiction to modify the decree or order under jurisdictional prerequisites substantially in accordance with the uniform child custody jurisdiction act, or the uniform child custody jurisdiction and enforcement act, or has declined to assume jurisdiction to modify the decree or order, or

(B) does not have jurisdiction over a proceeding for adoption substantially in conformity with subsection (a)(1) through (4) or has declined to assume jurisdiction proceeding for adoption; and

(2) the court of this state has jurisdiction over the proceeding.

"(c) Before determining whether or not to exercise its jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by such court of another state and that a forum will be available to the parties.

"(d) If the court determines not to exercise its jurisdiction, it may dismiss the proceedings, or it may stay the proceedings upon condition that an adoption proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper." K.S.A. 59-2127.

As we will more fully discuss, the result is an incomplete statutory scheme fraught with ambiguity. For example, although the

legislature did not adopt UAA § 3-101(a) and its subparts (1) through (4), it did not delete from K.S.A. 59-2127(b)(1)(B) the UAA's language that cross-references subsection (a)(1) through (4). As another example, while the Uniform Law Commissioners purposefully created provisions in the UAA that differ from the UCCJEA, they reconciled the potential conflict by specifically saying the UCCJEA did not apply, except where specifically incorporated. As pointed out by the Court of Appeals, the Kansas Legislature adopted the conflicting provisions but then provided no explicit guidance on how to reconcile the conflict.

Unfortunately, the minutes of the 2000 Kansas Legislature offer no insight into the legislature's intent. Nevertheless, we know the legislature amended K.S.A. 59-2127. That fact combines with several rules of statutory construction to lead us to conclude the district court and the Court of Appeals erred in this case in holding that the UCCJEA controlled over the provisions of K.S.A. 59-2127, including the provision authorizing a Kansas court to determine if the court of another state has continuing jurisdiction over a child-custody determination.

## ERROR IN APPLICATION OF K.S.A. 59-2127

Generally, in construing a statute, a court presumes "the legislature acts with full knowledge of existing law." *State v. Henning*, 289 Kan. 136, 144-45, 209 P.3d 711 (2009). In the context of this case, this would mean that we presume the legislature was aware of the decision in *Adoption of Baby Girl B.* and knew that Kansas courts were looking to the UCCJA or its replacement, the UCCJEA, to determine jurisdiction in nonagency adoption cases. The legislature altered that status quo when it amended K.S.A. 59-2127 and, in doing so, adopted provisions that differ from and are at odds with provisions in the UCCJA and UCCJEA.

The legislative decision to amend K.S.A. 59-2127 takes on additional significance in light of the canon of construction that directs a court to "presume that the legislature does not intend to enact useless or meaningless legislation." *Adoption of G.L.V.*, 286 Kan. at 1041. We must, therefore, give meaning to K.S.A. 59-2127 rather than ignore it, which is essentially what the district court

and Court of Appeals did. These presumptions support the conclusion the legislature meant to limit the holding in *Adoption of Baby Girl B.* in cases where the adoption proceedings are covered by K.S.A. 59-2127.

Further, we cannot dismiss the effect of K.S.A. 59-2127, as did the Court of Appeals, simply because its provisions differ from similar provisions found in the UCCJEA. Instead, we presume the legislature was aware of all the provisions in the same legislation and knew there were overlapping provisions that contained similar, but not identical, directives. The legislative history, which in this case includes the comments accompanying the uniform laws, indicates there were reasons for distinguishing between adoption and other custody proceedings and the Uniform Law Commissioners tailored UAA § 3-101 to accommodate the unique circumstances of adoptions. The Kansas Legislature adopted some of these distinctions. This court must consider these various provisions *in pari materia* with a view of reconciling and bringing the provisions into workable harmony, if possible. See *State v. Raschke,* 289 Kan. 911, 914, 219 P.3d 481 (2009). This can be done by recognizing the goal of the Uniform Law Commissioners in drafting the UAA to have adoption proceedings heard in the forum with the closest connections to, and the most substantial evidence about, the proposed adoptive family. Often, that forum is not the "home state" defined under the provisions of the UCCJEA. See Hollinger, 30 Fam. L.Q. at 368-69.

The Court of Appeals' decision to give preference to the policy behind the UCCJEA rather than the policy underlying UAA § 3-101 violates yet another canon of statutory construction:

"[C]ourts are obliged to take the legislature at its word, unless there is ambiguity, because the legislature, unlike the judiciary, is a branch of government charged with developing public policy on behalf of the electorate and because judicial deference to clear statutory language promotes long-term predictability and stability in Kansas law." *State v. Mishmash,* 295 Kan. 1140, 1143, 290 P.3d 243 (2012).

Even if we disagree with the policy reflected in K.S.A. 59-2127, we are obligated to apply the provision.

Finally, we note the canon of construction that instructs courts to apply a specific statute over a general statute and a specific provision within a statute over a more general provision within the statute. *In re K.M.H.*, 285 Kan. 53, 82, 169 P.3d 1025 (2007), *cert. denied* 555 U.S. 937 (2008).

Individually and collectively, these canons suggest K.S.A. 59-2127 controls the determination of jurisdiction in those adoption proceedings where its provisions apply, that is where there is or has been a child-custody proceeding involving the child in another state. Courts in other states, including Mississippi, have adopted this view. See, *e.g.*, *In re Adoption of D.N.T.*, 843 So. 2d 690, 705 (Miss. 2003). Accordingly, K.S.A. 59-2127 controls, and the UCCJEA applies only to the extent K.S.A. 59-2127 incorporates its provisions.

Hence, the district court and Court of Appeals erred in not applying the language of K.S.A. 59-2127(b)(1), which allows a Kansas court to make certain findings regarding the court of another state that issued the child-custody decree or order. Further, both of these courts erred in failing to consider other provisions in K.S.A. 59-2127.

Nevertheless, if, as a matter of law based on the factual findings made by the district court, K.S.A. 59-2127 prohibits a Kansas court from exercising jurisdiction over Stepfather's petition, the errors committed by the district court and Court of Appeals would be harmless and not reversible. See K.S.A. 60-2105 (an "appellate court shall disregard all mere technical errors and irregularities which do not affirmatively appear to have prejudicially affected the substantial rights of the party complaining"); *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012) (harmless error test of K.S.A. 60-261 and K.S.A. 60-2105 requires determination of whether there is a reasonable probability that the error affected the outcome). Consequently, we must apply the provisions of K.S.A. 59-2127 to determine if there is a reasonable probability the error affected the outcome of the decision not to exercise jurisdiction. If the issue cannot be resolved as a matter of law, the discussion will hopefully provide some guidance on remand.

## APPLICATION OF K.S.A. 59-2127 AND THE UCCJEA

As we have discussed, K.S.A. 59-2127 does not affirmatively state when a Kansas court may exercise jurisdiction over an adoption. It merely limits when a court cannot exercise jurisdiction. Although this leaves an ambiguity regarding how jurisdiction is determined in a stepparent adoption proceeding, that ambiguity is not at issue in this appeal because Father only argues that Mississippi has priority in the exercise of jurisdiction; he does not suggest Kansas would lack jurisdiction over the adoption if it is determined that Mississippi does not have continuing jurisdiction over the child-custody order. In other words, the parties raise an issue that is resolved by the limitations stated in K.S.A. 59-2127: Can a Kansas court exercise jurisdiction if another court has made a child-custody determination regarding the child? In addressing this issue, K.S.A. 59-2127 divides interstate cases into two broad categories: (a) those in which there is a custody proceeding pending in another state and (b) those in which the court of another state has issued a decree or order concerning the custody of the child.

*K.S.A. 59-2127(a)—Pending Custody or Adoption Proceeding in Another State*

More specifically, the first limitation in K.S.A. 59-2127 applies "if at the time the petition for adoption is filed a proceeding concerning the custody or adoption of the minor is pending in a court of another state." K.S.A. 59-2127(a). This provision does not limit Kansas' jurisdiction over this adoption.

It is undisputed that the Mississippi court *had* issued a custody order several years before the adoption was filed. A prior order falls clearly under the language of K.S.A. 59-2127(b)—"[i]f a court of another state *has* issued a decree or order"—rather than subsection (a). (Emphasis added.) Further, as made clear by the temporal reference in subsection (a), the time of the filing of the petition is the point to determine whether there is a pending action in another state. As a result, if we accept the unsupported assertion that Father filed a motion for contempt in Mississippi after the adoption action was filed, the Mississippi filing does not divest Kansas of jurisdiction. Further, there has been no suggestion that an-

other adoption proceeding was pending. Consequently, the Saline County District Court was not prohibited from exercising jurisdiction under K.S.A. 59-2127(a).

*K.S.A. 59-2127(b)—Prior Custody Order in Another State*

K.S.A. 59-2127(b) must be considered, however, because the Mississippi court had issued a prior custody order concerning the child in 1999. Under the plain language of subsection (b), if a court of another state has made a child-custody determination, a Kansas court cannot exercise jurisdiction unless one of several stated exceptions apply. These exceptions are divided into two major categories, each with alternatives. The first category—subsection (b)(1)(A)—focuses on continuing jurisdiction over the child-custody order or decree, and the second—subsection (b)(1)(B)—focuses on jurisdiction over the adoption proceeding.

If one of these exceptions applies, the Kansas court must also determine that it has jurisdiction. As we have noted, at least in this appeal, Father does not dispute that a Kansas court could have jurisdiction if the Mississippi court does not.

*K.S.A. 59-2127(b)(1)(A)—Determining if Mississippi Has Continuing Jurisdiction*

The Court of Appeals focused on the exception stated in K.S.A. 59-2127(b)(1)(A), which applies if a Kansas court finds that the issuing state "[d]oes not have continuing jurisdiction to modify the [child-custody] decree or order under jurisdictional prerequisites substantially in accordance with the . . . [UCCJEA], or has declined to assume jurisdiction to modify the [child-custody] decree or order."

It is undisputed that the last of these two alternatives—*i.e.*, the issuing state has declined to exercise jurisdiction to modify the order—does not apply: There is no factual suggestion in the record or argument by any party to support its application. As far as we know, the Mississippi court has neither declined nor affirmed its exclusive, continuing jurisdiction over the child-custody order.

The other alternative, as discussed by the Court of Appeals, is in conflict with the UCCJEA. It allows a Kansas court to determine whether the Mississippi court has continuing jurisdiction, but the

UCCJEA, specifically K.S.A. 2012 Supp. 23-37,202(a)(2), allows only the Mississippi court to make this determination. Compare K.S.A. 59-2127(b)(1) ("The court of this state finds that the court of the state which issued the decree or order") with K.S.A. 2012 Supp. 23-37,202(a)(1) ("[A] court of this state which has made a child-custody determination . . . has exclusive, continuing jurisdiction over the determination until: (1) A court of this state determines" there is no significant connection with this state.); see UCCJEA § 202, comment 1, 9 Pt. 1A U.L.A. § 202, p. 674 (1999) ("The use of the phrase 'a court of this state' under subsection [a][1] makes it clear that that the original decree state is the sole determinant of whether jurisdiction continues.").

Although the district court did not cite K.S.A. 2012 Supp. 23-37,202(a)(2), it effectively applied the statute by ruling that the Mississippi court retains jurisdiction until it rules otherwise. As previously indicated, we hold this ruling was in error. For the reasons we have discussed, we conclude K.S.A. 59-2127 controls over the conflicting UCCJEA provision and a Kansas court can make the determination of whether the original decree state, in this case Mississippi, has continuing jurisdiction in an adoption proceeding.

Stepfather argues the district court should have found that the Mississippi court does not have exclusive, continuing jurisdiction under Miss. Code Ann. § 93-27-202 (Rev. 2004; 2012 Supp.) and K.S.A. 2012 Supp. 23-37,202, both of which are identical to UCCJEA § 202, because "neither the child, the child's parents, and any person acting as a parent [has] a significant connection with" Mississippi. Stepfather alleges Father has not resided continuously in Mississippi, and "substantial evidence is no longer available in [Mississippi] concerning the child's care, protection, training, and personal relationships." See UCCJEA § 202, comment 2, 9 Pt. 1A U.L.A. § 202, pp. 674-75 (1999) (noting that state loses exclusive, continuing jurisdiction if the child, the parents, and all persons acting as parents leave the state, and jurisdiction will not be reestablished if the noncustodial parent returns to the state). Each of these arguments is fact dependent and necessitates factual findings before Miss. Code Ann. § 93-27-202 and K.S.A. 2012 Supp. 23-37,202 can be applied. The district court did not consider

these facts, and this court, which does not make factual findings, is unable to determine for the first time on appeal if Stepfather could meet the required burden. See *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010) (appellate court only reviews factual findings made by district court, it does not make findings).

These factual determinations may not need to be made, however, if the exception in K.S.A. 59-2127(b)(1)(B) applies.

*K.S.A. 59-2127(b)(1)(B)—Determining if Mississippi Has Jurisdiction Over the Adoption Proceeding*

Neither the district court nor the Court of Appeals discussed K.S.A. 59-2127(b)(1)(B), which applies if the state issuing the initial custody order "does not have jurisdiction over a proceeding for *adoption* substantially in conformity with subsection (a)(1) through (4) or has declined to assume jurisdiction." (Emphasis added.) As compared to subsection (b)(1)(A), which focuses on continuing jurisdiction over the child-custody order, subsection (b)(1)(B) focuses on jurisdiction over the adoption.

K.S.A. 59-2127(b)(1)(B) should not have been ignored because K.S.A. 59-2127(b)(1)(A) and (b)(1)(B) are joined by the conjunction "or." Generally, the legislature's use of the conjunction "or" signals the intent to state alternatives, separating each alternative into distinct subsections. See *State v. Brown*, 295 Kan. 181, 196, 284 P.3d 977 (2012). Consequently, the legislature's use of or between subsections (A) and (B) in K.S.A. 59-2127(b)(1) means the legislature intended for a court to have two alternatives for asserting jurisdiction over an adoption proceeding, even though a court of another state had issued a custody order. These alternatives are either: (A) The other court does not have continuing jurisdiction over the child-custody determination *or* (B) the other court does not have jurisdiction over the adoption proceeding.

In other words, even if the Mississippi court has continuing jurisdiction over the child-custody determination, the Kansas court would have jurisdiction if the Mississippi court does not have jurisdiction over the adoption. As the Reporter for the Uniform Law Commissioners explains, under the UAA the original state may "continue to have jurisdiction to modify" the original child-custody

determination "but does not have jurisdiction over the proposed adoption, [and] the adoption petition should be filed where the adopters live." Hollinger, *The Uniform Adoption Act: Reporter's Ruminations*, 30 Fam. L.Q. 345, 371 (1996). Consequently, we consider the two alternatives provided in K.S.A. 59-2127(b)(1)(B).

One alternative in this provision applies if Mississippi "has declined to assume jurisdiction proceeding for adoption." K.S.A. 59-2127(b)(1)(B). It is undisputed that Mississippi has not asserted or declined to assume jurisdiction over the adoption; in fact, there is no indication in the record on appeal that the Mississippi court is even aware of the adoption proceeding.

The second alternative applies if Mississippi "does not have jurisdiction over a proceeding for *adoption* substantially in conformity with subsection (a)(1) through (4)." (Emphasis added.) K.S.A. 59-2127(b)(1)(B). Application of this alternative is complicated by the ambiguity resulting from the cross-reference to "subsection (a)(1) through (4)," subsections that do not exist. As we previously discussed, the source of the phrase "substantially in conformity with subsection (a)(1) through (4)" in K.S.A. 59-2127(b)(1)(B) is easily determined because the language of that subsection is identical to UAA § 3-101(b). UAA § 3-101 includes a subsection (a) that has five subsections and, obviously, UAA § 3-101(b) refers back to four of those five subsections—(a)(1) through (4). See 9 Pt. 1A U.L.A. § 3-101, pp. 67-68 (1999). Thus, in the full context of UAA § 3-101 the phrase makes sense and can be applied.

Since the Kansas Legislature did not adopt these subsections, the retention of the cross-reference has all the earmarks of a drafting error. This conclusion is further supported by the fact that although there are other statutes in the KARA that have subsections (a)(1) through (4), those statutes do not relate to jurisdiction over adoption proceedings. See K.S.A. 59-2121 (payment for adoption); K.S.A. 59-2128 (petition for adoption); K.S.A. 2012 Supp. 59-2129 (consent); K.S.A. 59-2130 (independent and agency adoptions); K.S.A. 59-2139 (petition for adult adoption).

Father suggests, however, that we should look to see if the exercise of jurisdiction conforms to K.S.A. 2012 Supp. 23-37,201, which has subsections (a)(1) through (4). This UCCJEA provision

defines jurisdiction over initial child-custody determinations and has been applied by the Court of Appeals in adoptions where an initial child-custody determination is being made. See *In re B.B.M.*, No. 91,959, 2004 WL 2929120, at *2-5 (Kan. App. 2004) (unpublished opinion) (discussing jurisdiction issues where the biological unwed parents lived in Texas, mother came to Kansas to give birth and consented to adoption, father objected and filed a parentage proceeding at the same time the adoptive parents filed an adoption petition; Kansas had subject matter jurisdiction as the child's home state); *In re Adoption of Baby C.*, No. 90,035, 2003 WL 22990194, at *2-3 (Kan. App. 2003) (unpublished opinion) (biological father's attempt to set aside an adoption decree on the grounds of lack of jurisdiction failed because Kansas was the home state of the child on the date of the commencement of the proceedings), *rev. denied* 277 Kan. 924 (2004).

Nevertheless, this case does not fall under the terms of that UCCJEA provision because it does not involve an initial child-custody determination. And the UCCJEA provisions that arguably do apply—K.S.A. 2012 Supp. 23-37,202 (exclusive, continuing jurisdiction) and K.S.A. 2012 Supp. 23-37,203 (jurisdiction to modify determination)—do not have subsections (a)(1) through (4). Father suggests that nonetheless because K.S.A. 59-2127 incorporates the UCCJEA, we should consider all of the UCCJEA to be incorporated. Not only would such an approach expand the language adopted by the legislature, it would effectively duplicate K.S.A. 59-2127(b)(1)(A) and require a determination of whether the Mississippi court has continuing jurisdiction over the child-custody determination. As we have discussed, the intent of the UAA § 3-101 and of K.S.A. 59-2127 is to provide distinct alternatives that require a determination of whether Mississippi has continuing jurisdiction over the child-custody determination *or* whether Mississippi has jurisdiction over the adoption.

Consequently, we conclude the cross-reference to subsections (a)(1) through (4) in K.S.A. 59-2127(b)(1)(B) points to thin air and is meaningless. We frequently reiterate that courts do not delete language from or add language to Kansas statutes. *E.g., State v. Ardry*, 295 Kan. 733, 737, 286 P.3d 207 (2012). Nevertheless, as

the United States Supreme Court has stated, general rules of statutory construction and specific canons " 'are often countered . . . by some maxim pointing in a different direction.' [Citation omitted.]" *Chickasaw Nation v. United States*, 534 U.S. 84, 94, 122 S. Ct. 528, 151 L. Ed. 2d 474 (2001). The Supreme Court then provided an example relevant to our consideration of K.S.A. 59-2127(b)(1)(B):

"The canon requiring a court to give effect to each word *'if possible'* is sometimes offset by the canon that permits a court to reject words 'as surplusage' if 'inadvertently inserted or if repugnant to the rest of the statute . . . .' K. Llewellyn, The Common Law Tradition 525 (1960). And the latter canon has particular force here where the surplus words consist simply of a numerical cross-reference in a parenthetical. [Citation omitted.]" 534 U.S. at 94.

We conclude that this is one of the rare cases in which it is appropriate to reject the cross-reference phrase as surplusage because we are not able to give the phrase meaning. The phrase does not cross-reference an existing or repealed statute. *Cf. Herrmann v. Cencom Cable Associates, Inc.*, 978 F.2d 978, 983 (7th Cir. 1992) ("[C]ross-references pose[] a risk that one of the references will point to thin air, or to a destination out of synch with the referring provision [if repealed]. . . . The best approach, we believe, is the one we have used here: treat the referring clause as continuing to point to its original target, even if that target moves or acquires a new number."). And, although the offending phrase in K.S.A. 59-2127(b)(1)(B) is not in a parenthetical, it is a numerical cross-reference. Consequently, striking the cross-reference phrase "substantially in conformity with subsection (a)(1) through (4)," we conclude the task imposed by K.S.A. 59-2127(b)(1)(B) is to determine if Mississippi "does not have jurisdiction over a proceeding for adoption."

To make this determination, we must examine Mississippi statutes that define jurisdiction over adoption proceedings. Father cites Miss. Code Ann. § 93-27-201 (Rev. 2004; 2012 Supp.), which codifies UCCJEA § 201 (initial child-custody jurisdiction) and is substantially equivalent to K.S.A. 2012 Supp. 23-37,201, to argue Mississippi does have jurisdiction over the adoption. But Father also recognizes that Mississippi has adopted a specific statute regarding jurisdiction for adoption proceedings; he addresses this

statute as an alternative argument, however. Father's primary reliance on the UCCJEA provision is misplaced because the Mississippi Supreme Court has emphasized that the UCCJEA provisions "should not be indiscriminately utilized in adoption cases in an effort to obtain or defeat jurisdiction in our Mississippi courts because our statutes accommodate us well in clearly setting out the jurisdiction and venue requirements in adoption proceedings." *Adoption of D.N.T.*, 843 So. 2d at 705. Hence, we look to Mississippi's adoption jurisdiction statute to determine if that state would have jurisdiction over Stepfather's petition.

The Mississippi adoption statute is virtually identical to UAA § 3-101; however, the UAA subsections (a)(1) through (5) are relabeled (1)(a) through (e). The Mississippi statute states, in part:

"(1) Except as otherwise provided in subsections (2) and (3), a court of this state has jurisdiction over a proceeding for the adoption of a minor commenced under this chapter if:

(a) Immediately before commencement of the proceeding, the minor lived in this state with a parent, a guardian, a prospective adoptive parent or another person acting as parent, for at least six (6) consecutive months, excluding periods of temporary absence, or, in the case of a minor under six (6) months of age, lived in this state from soon after birth with any of those individuals and there is available in this state substantial evidence concerning the minor's present or future care;

(b) Immediately before commencement of the proceeding, the prospective adoptive parent lived in this state for at least six (6) consecutive months, excluding periods of temporary absence, and there is available in this state substantial evidence concerning the minor's present or future care;

(c) [Relating to agency adoptions] . . . ;

. . . .

(d) [Relating to emergency adoptions] . . . ; or

(e) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a) through (d), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to hear a petition for adoption of the minor, and it is in the best interest of the minor that a court of this state assume jurisdiction." Miss. Code Ann. § 93-17-3(1) (Rev. 2004; 2012 Supp.).

Because the minor and the prospective adoptive parent lived in Kansas and not Mississippi for the 6 months immediately preceding the filing of the adoption petition, a Mississippi court could not exercise jurisdiction under either subsections (a) or (b). Nor could

it under subsections (c) and (d), which address agency and emergency adoptions.

Application of subsection (e) is more complicated. Before discussing its application, we note that if the Kansas Legislature had adopted all of UAA § 3-101, we would not consider the application of subsection (1)(e), which is the counterpart to UAA § 3-101(a)(5), because the UAA limits the consideration of whether the other state's exercise of jurisdiction "is substantially in conformity with subsection (a)(1) through (4)," which corresponds to subsections (1)(a) through (d) in the Mississippi statute. Nevertheless, because we have redacted this cross-reference phrase from the Kansas statute, we will consider whether a Mississippi court could exercise jurisdiction under subsection (e).

Subsection (e) provides two alternatives. The first alternative applies if "[i]t appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a) through (d)." Miss. Code Ann. § 93-17-3(1)(e). Because Child and Stepfather had resided in Kansas for at least the 6 consecutive months immediately before the filing of the petition for adoption, Kansas could exercise jurisdiction under the prerequisites in accordance with subsections (a) and (b). And because subsections (c) and (d) are not relevant to this case and, therefore, would not prevent the exercise of jurisdiction under subsections (a) or (b), Kansas could exercise jurisdiction in accordance with subsections (a) through (d). As a result, Mississippi has jurisdiction only if the other alternative in subsection (e) applies.

The second alternative applies if "another state has declined to exercise jurisdiction on the ground that this state [Mississippi] is the more appropriate forum to hear a petition for adoption of the minor, and it is in the best interest of the minor that a court of this state assume jurisdiction." Miss. Code Ann. § 93-17-3(1)(e). Here, the district court determined Mississippi is the more appropriate forum. Yet, even if we found that the district court did not abuse its discretion in making that decision, we cannot apply this statute because we do not know if a Mississippi judge would determine that it is in the child's best interest for a Mississippi court to assume jurisdiction. In part, this is because the district court did not utilize

the procedure set out in K.S.A. 59-2127(c), which would have allowed the court to communicate with the Mississippi court "with a view to assuring that jurisdiction will be exercised by such court . . . and that a forum will be available to the parties." Before a district court rules that another state is the more appropriate forum to exercise jurisdiction over an adoption proceeding, the court should utilize the procedure provided in K.S.A. 59-2127(c).

*No Limitation on Kansas' Jurisdiction*

This means there is no limitation on Kansas' jurisdiction over this adoption proceeding that can be determined as a matter of law or by applying the district court's findings of fact to the law. This conclusion also means that the district court's failure to apply K.S.A. 59-2127 cannot be deemed harmless error because there is a reasonable probability the outcome would have been different had the district court made the necessary findings and applied K.S.A. 59-2127.

## INCONVENIENT FORUM

Alternatively, the district court determined Kansas is an inconvenient forum and Mississippi is the most appropriate forum. The parties argue over whether the court appropriately applied the factors listed in K.S.A. 2012 Supp. 23-37,207(b)(1) through (8), the inconvenient forum provision of the UCCJEA. Neither party questions the applicability of that provision to an adoption proceeding. And there is authority for applying it. See *In re Adoption of Baby Boy M.*, 40 Kan. App. 2d 551, 557-58, 193 P.3d 520 (2008); *In re Adoption of Baby Girl B.*, 19 Kan. App. 2d 283, 288, 867 P.2d 1074, *rev. denied* 255 Kan. 1001 (1994). Nevertheless, we note the question—especially as it arises in a stepparent adoption proceeding where the KARA substantially limits the use of the UCCJEA—to emphasize that this opinion should not be read to stand as another authority where the question was considered and resolved.

In reviewing a district court's decision under K.S.A. 2012 Supp. 23-37,207, an appellate court reviews a decision to exercise or decline jurisdiction for an abuse of discretion. *Adoption of Baby Boy M.*, 40 Kan. App. 2d at 557; *Adoption of Baby Girl B.*, 19 Kan.

App. 2d at 288. Judicial discretion is abused, among other ways, "if the judicial action is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion." *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Here, the district court made two errors of law that constitute an abuse of discretion.

First, the district court found that Mississippi is an appropriate forum without a proper determination that Mississippi has jurisdiction over the adoption. If Mississippi does not have continuing jurisdiction to modify the child-custody determination or does not have jurisdiction over the adoption, it is not an available forum and, therefore, cannot be the most appropriate forum. The district court erred in failing to make these determinations before deeming Mississippi the more appropriate forum.

In addition, the district court failed to consider and apply K.S.A. 2012 Supp. 23-37,207(d), which states: "A court of this state may decline to exercise jurisdiction under [the UCCJEA] if a child-custody determination is incidental to an action for divorce or another proceeding while still retaining jurisdiction over the divorce or other proceeding." This provision is significant because, as we have noted, under the UAA the original state may continue to have jurisdiction to modify the original child-custody determination but not have jurisdiction over the proposed adoption. The UAA Reporter has indicated that "[i]mplicitly, the UAA suggests . . . the adoption petition should be . . . stayed in order to first terminate or modify the custody or visitation order in the original state." Hollinger, 30 Fam. L.Q. at 371; *accord* Kay, *Adoption in the Conflict of Laws: The U.A.A., Not the U.C.C.J.A., Is the Answer*, 84 Cal. L. Rev. 703, 751 (1996) (opining that decision in *Souza v. Superior Court*, 193 Cal. App. 3d 1304, 238 Cal. Rptr. 892 [1987], is consistent with UAA § 3-101; court ruled second state had jurisdiction over adoption, but the state that had issued the initial child-custody order should determine whether father's consent would be dispensed with on the ground he had abandoned his daughter consequently staying the adoption proceeding pending resolution of the custody order); see K.S.A. 59-2127(d) (allowing a court of this state to stay an adoption proceeding on the condition

that the proceeding is promptly commenced upon the resolution of conditions deemed proper).

On remand, if in the application of K.S.A. 59-2127(b)(1)(A) the district court determines Mississippi has continuing jurisdiction over the child-custody determination, K.S.A. 2012 Supp. 23-37,307 should be considered. In doing so, the purpose of K.S.A. 59-2127, which is to have adoption proceedings heard in the forum with the closest connections to, and the most substantial evidence about, the proposed adoptive family, should be considered.

## CONCLUSION

We hold that the district court and Court of Appeals erred in failing to apply K.S.A. 59-2127 and determining that a Kansas court cannot exercise jurisdiction over this adoption proceeding simply because the Mississippi court has not relinquished jurisdiction over child-custody determinations involving the child. We further hold that there was error in failing to consider all provisions of K.S.A. 59-2127, including the question of whether a Mississippi court could exercise jurisdiction over the adoption. Finally, we hold the district court abused its discretion in determining Mississippi is a more appropriate forum.

Because there is a reasonable probability that a Kansas court has jurisdiction over this stepparent adoption proceeding, we find these errors to be reversible. We remand for the district court to apply the provisions of K.S.A. 59-2127 in a manner consistent with this decision.

In closing, we urge the Kansas Legislature to address the ambiguities in K.S.A. 59-2127 brought to light by the facts of this case. While Kansas courts have adopted the "convoluted" approach of looking to the UCCJEA and specifically K.S.A. 2012 Supp. 23-37,201 in cases where there has not been a previous child-custody determination because there is no other statute to look to, this provision does not fit the circumstances of a stepparent adoption. Our decision to strike the cross-reference to subsections (a)(1) through (4) in K.S.A. 59-2127(b)(1)(B) is merely a Band-Aid that does not adequately cover the gaping holes in the statutory framework. Study and legislative action is needed to provide clarity that

will spare children, adoptive families, and natural parents the pain, expense, and delays inherent in litigation.

Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded with directions.