NOT DESIGNATED FOR PUBLICATION

No. 116,024

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of P.M. and A.M.,
minor children.

MEMORANDUM OPINION

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed May 26, 2017.
Affirmed.

*Frederick B. Campbell*, of Garnett, for appellant natural mother.

*Meredith D. Mazza*, assistant county attorney, and *Stephen Hunting*, county attorney, for appellee.

Before LEBEN, P.J., POWELL and SCHROEDER, JJ.

LEBEN, J.: Mother appeals the termination of her rights as a parent to two children, P.M. (born in 2000) and A.M. (born in 2004). On appeal, Mother does not challenge the factual findings of the district court or its legal conclusion that she was unfit as a parent and unable to care for the children—the conclusions that supported the district court's decision that Mother's parental rights be terminated so that the children could be adopted. Instead, Mother challenges several procedural steps taken by the district court—its denial of her request for a continuance of the trial and its failure to take some procedural steps or make some factual findings related to notice to grandparents or to its separate termination of the parental rights of each child's father.

But Mother's complaints about the way the case proceeded regarding grandparents or the men who fathered these children had nothing to do with the court's conclusion that

1

she had proved unfit to parent them and that her unfitness was unlikely to change in the foreseeable future. Ordinarily, for a person to have standing to raise a claim in court, there must be a causal connection between the claim of error and the person's claimed injury. *Board of Sumner County Comm'rs v. Bremby*, 286 Kan. 745, 761, 189 P.3d 494 (2008). Here, Mother has not shown any connection between her claims of procedural error and the termination of *her* parental rights. Moreover, even where constitutional rights are at stake, like a parent's right to care for his or her children, what we call "harmless errors" (ones that don't affect a person's substantive rights or the result of the proceeding) do not call for setting aside a district court's judgment. See *In re Adoption of H.C.H.*, 297 Kan. 819, 833, 304 P.3d 1271 (2013); *In re Adoption of B.J.M.*, 42 Kan. App. 2d 77, 87, 209 P.3d 200 (2009). Except for her claim about the denial of her request for a continuance of the trial, Mother has shown no harm to her from any of the alleged errors she raises on appeal. And as to Mother's claim regarding the denial of her motion to continue the trial, we find no abuse of discretion in the district court's ruling. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

To place the legal arguments made on appeal in context, we will first review the facts of the case and the legal proceedings in the district court. Mother has two daughters, P.M. and A.M. P.M. was 13 and A.M. was 9 when the action to deem them children in need of care was filed.

P.M.'s father is T.L. Mother has alleged that C.R. is A.M.'s father, although his paternity has not been established in a formal paternity proceeding in court.

The State's petition, filed October 31, 2013, provided some background about what led the State to file these cases—one involving each child. Each petition included an identical paragraph alleging, among other things, that the children reported being

2

homeless and that Mother had left her children without proper supervision while she left to use drugs:

> "Mother dropped child off at [Ottawa Retirement Village] to visit grandmother. Child was left there the majority of the afternoon. Grandmother is not capable of caring for the child. When Mother returned she admitted she had gone to a friend's house and had been smoking Methamphetamine and marijuana. Mother was arrested on traffic charges from driving to ORV with a suspended driver's license. Child reported being homeless."

On December 5, 2013, the district court determined that P.M. and A.M. were children in need of care, which allows for temporary placement with the State under court supervision. The court ordered that P.M. and A.M. be in the custody of the Department for Children and Families in an out-of-home placement, with the goal of reintegration with a parent.

For nearly 2 years, the district court held a series of review hearings. Then, in August 2015, the court concluded that progress to achieve the goal of reintegration had not been adequate, that reasonable efforts to support reintegration had been made by the public agencies involved in this case, that reintegration with a parent was no longer a viable option in A.M.'s case, and that reintegration with Mother was no longer a viable option in P.M.'s case.

The next month, in September 2015, the State filed a motion to terminate the parental rights of Mother and C.R. to A.M. The motion did not list any maternal or paternal grandparents. In November 2015, the State filed a motion to terminate the parental rights of Mother and T.L. to P.M. The motion listed maternal grandparents but did not list paternal grandparents. Later that month, T.L. voluntarily gave up his parental rights to P.M.

The State filed an affidavit that it had published notice of the action in the *Clarinda Herald-Journal* in Page County, Iowa, and that the notice had run on October 29, 2015, and November 5, 2015. The State alleged that this provided proper notice to C.R. and to any paternal grandparents of A.M. The notice was not published in a newspaper in Franklin County, Kansas, where the court case was pending.

The district court set a trial on the State's motions to terminate parental rights for January 15, 2016. Since T.L. had given up his parental rights to P.M., the trial would cover only the parental rights of Mother and C.R.

At the start of trial, noting that C.R. was not present, the district court first sought to determine whether he had been properly notified of the proceedings through either personal or publication service. The State noted that proof of publication in Page County, Iowa, had been previously filed with the court and that the publication ran for 2 consecutive weeks, as had been ordered by the court. The State also noted that Page County, Iowa, was where the State last had an address for C.R. Mother's attorney did not comment on the issue of whether C.R. had been properly served with notice of the proceedings.

Mother's attorney then requested a continuance. She noted that Mother had previously been represented by another attorney, that she had had only a limited time to prepare, and that there had been late-breaking developments just before trial—some factual materials had only recently been provided by the State and a new witness had recently been disclosed. Mother's attorney claimed that Mother's right to due process would be violated if the court refused to grant a continuance.

The State's attorney conceded that it had only notified Mother's attorney the day before trial that it wanted to call A.M.'s therapist as a witness—the State said that it had only learned of a letter from A.M.'s therapist 2 days before trial when KVC (a contractor

4

providing services to the family on behalf of the State) provided it. The State's attorney said the information had been provided to Mother's attorney as soon as the State decided it wanted to call the therapist as a witness. Even so, the therapist's name had been included in several reports that had been submitted to the court and parties by KVC as the case had progressed. And the State's attorney noted that Mother's attorney had been in the case since September 2015; Mother's attorney first appeared with Mother at a hearing held September 22, 2015, nearly 4 months before the trial began.

There is a statute, K.S.A. 2016 Supp. 38-2245, that provides discovery procedures for cases in which parental rights would be terminated. Under K.S.A. 2016 Supp. 38-2245(b), for example, a party may request that the other party "disclose the names of all potential witnesses," though the statute doesn't provide a specific time frame. Here, neither party sent any requests for disclosure pursuant to the statute, relying instead on the informal discovery process used in most cases.

Mother argued that she had just received discovery that week. The State agreed that documentation had been sent late because KVC sent the documents only 2 days prior to the hearing. Because the documents were being sent so close to trial, the State's attorney said that she had had KVC simultaneously email the documents to all parties in the case, not just to her.

The district court denied Mother's continuance request and allowed the State to proceed to present its evidence. But the court also provided that Mother could renew her motion for a continuance at the end of the State's case if she still needed additional time to prepare.

Mother did not renew her motion at the end of the State's case, but she got some additional time to prepare, anyway, because it was near the end of the day when the State

completed its presentation. So Mother and her attorney had additional time from Friday, January 15, until Tuesday, January 19, to prepare the evidence she would present.

We know that Mother presented evidence on January 19, but for some reason no transcript of that hearing has been provided in the record on appeal. Mother, as the appellant, has the duty on appeal to provide a record showing error. *Estate of Mills v. Mangosing*, 44 Kan. App. 2d 399, Syl. ¶ 5, 238 P.3d 293 (2010). While we can't fully assess the trial record since Mother's evidence is not available to us, we still have enough information about the handling of Mother's continuance request—and the other issues she has raised on appeal—to address them.

After Mother presented her evidence, the district court began to give its ruling orally from the bench—but the court stopped after Mother left the courtroom and didn't return. We know that because the court explained what had happened when it next held a hearing—with Mother in attendance—on February 16.

The district court found that Mother was unfit as a parent and that her unfitness was unlikely to change in the foreseeable future. Based on those findings and its conclusion that termination of parental rights was in the best interests of the children, the district court terminated Mother's parental rights to P.M. and A.M. The district court also terminated the parental rights of C.R. to A.M.

A written order containing the court's rulings was approved as to form by the attorneys and filed with the court. The written order said that notice had been given to all parties as required by law, including a specific finding that C.R. had been served by publication. The written order listed several factual bases for the termination of Mother's parental rights: (1) Mother's continuing methamphetamine usage; (2) Mother's lack of income; (3) Mother's failure to cooperate with drug testing; (4) Mother having lied about attending inpatient treatment; (5) Mother having made no visits with her children for a

6

significant period of time; and (6) Mother having not participated in mental-health services.

Mother appealed the parental-rights termination to our court.

ANALYSIS

Mother makes several arguments on appeal, but they group into two categories. First, she argues that the district court made several procedural missteps in handling the case. Second, she argues that the district court should have granted her request to continue the trial date.

Mother's procedural claims relate to the formal process of notifying parties to a legal action about the proceeding. Formal parties to a suit (here, an action to terminate parental rights) must be served with the legal papers. See K.S.A. 2016 Supp. 38-2237. If that can't be done in person, then notice of the proceeding may be published in a newspaper of general circulation, but first the party bringing the action must use "due diligence" to serve parties in person. See K.S.A. 2016 Supp. 38-2237(e).

With that background, here are the specific procedural arguments Mother is making, though she has not shown how they have affected her rights:

- Mother contends that the court failed to make a finding required by statute about the efforts made to locate and notify C.R., C.R.'s parents, T.L.'s parents, and potentially other relatives. K.S.A. 2016 Supp. 38-2267(b) requires that the court give notice of a termination hearing to all interested parties and to all the child's grandparents; it also requires due diligence to locate a parent's "nearest relative" if the parent cannot be located. K.S.A. 2016 Supp. 38-2267(c) then requires that the court—at the beginning of the termination hearing—"determine that due diligence

7

has been used" in locating those people and either formally serving legal process or providing notice on them. Mother argues that the district court did not "state the specific facts on the record [of the hearing] showing that reasonable diligence was exercised."

- Mother contends that in addition to failing to make that finding, there in fact wasn't sufficient notice provided to T.L.'s parents. She notes that grandparents are considered interested parties to child-in-need-of-care and termination-of-parental-rights proceedings. See K.S.A. 2016 Supp. 38-2202(m); 38-2241(c); 38-2267(b).

- Mother contends that the notice published in an Iowa newspaper was insufficient because it didn't include the names of C.R., the alleged father of A.M., or of his parents. Mother doesn't cite a statutory requirement that those names be included in the publication notice, but she argues that without the names, the notice was so unlikely to achieve its goal that due process standards were not met.

- Mother argues that the notice should have been published not only in Iowa, where C.R.'s last known address was, but also in Franklin County, Kansas, where the court proceedings were taking place. Mother cites K.S.A. 2016 Supp. 38-2237(e), which requires publication "in the county where the petition is filed" and, if it's substantially certain the parent resides in some other known locality, "also . . . in that locality."

The initial hurdle Mother must clear to raise these claims on appeal is standing. For a person to have standing to raise a claim in court, that person generally must show two things: (1) that he or she has suffered an injury the law recognizes and (2) that there is a causal connection between that injury and the challenged conduct (here, the claims of court error). *Bremby*, 286 Kan. at 761. In addition, standing is a jurisdictional question, 286 Kan. at 750, so we must consider it even if the parties have not raised it (though the State has asserted it with regard to most of Mother's procedural claims). See *KNEA v. State*, 305 Kan. 739, 387 P.3d 795, 799 (2017); *Friends of Bethany Place v. City of Topeka*, 297 Kan. 1112, 1122, 307 P.3d 1255 (2013).

8

Under the two-part standing test, Mother has, of course, suffered an injury the law recognizes: Her parental rights have been terminated. But she has not shown how any of these claimed procedural errors have affected *her* rights. The evidence presented by the State was adequate to terminate her parental rights; she hasn't challenged that on appeal. Nor has she suggested that C.R., any of the grandparents, or any other relative had any evidence that would have assisted her in defending against the termination of her parental rights.

We do recognize that there is one unpublished case from our court that supports Mother's position: *In re M.H.*, No. 112,378, 2015 WL 3514180 (Kan. App. 2015) (unpublished opinion). The mother in that case made a similar argument—that notice as required by statute hadn't been made to a grandparent—and our court rejected the State's objection that the mother lacked standing to raise the issue. But our court's opinion cited no statute or caselaw in support of its holding and did not purport to apply the two-part standing test from *Bremby* and other cases:

> "The State contends that Mother does not have standing to raise this issue. We reject that contention: A party has whatever minimal standing is necessary to bring to our attention the failure of the district court to comply with a statute." 2015 WL 3514180, at *7.

Accordingly, we decline to follow the precedent set by *In re M.H.* on this point. See *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 13, 287 P.3d 287 (2012) (noting the ability of panels of the Court of Appeals to disagree with a prior panel opinion).

Even if Mother had standing to raise these procedural issues, another hurdle would come into view—the legal doctrine of harmless error. As we explained at the outset of our opinion, even where constitutional rights are at issue—and the loss of parental rights certainly qualifies—errors that don't affect a person's substantive rights or the result of the proceeding do not call for setting aside a district court's judgment. See *In re Adoption*

*of H.C.H.*, 297 Kan. at 833; *In re Adoption of B.J.M.*, 42 Kan. App. 2d at 87. As we explained when considering standing, Mother has not shown how any of these alleged procedural errors affected her rights at trial. Without a showing that an error harmed Mother's rights, the error was harmless as to her.

Before we move to the final issue—the district court's denial of her continuance request—we note one other issue mentioned in Mother's brief on appeal. She very briefly suggests that there may have been a violation of the Indian Child Welfare Act, 25 U.S.C. § 1901 *et seq*. (2012). Mother initially states that "the state was given the names of A.M.'s paternal grandparents by the Cherokee Nation," and she then argues that "[f]ailure by the state to provide sufficient information to the Cherokee Nation *could also be a violation* of the Indian Child Welfare Act." (Emphasis added.) We recognize the importance of the Indian Child Welfare Act, but a party raising an issue on appeal must provide some argument in support of that position, not merely raise a theoretical possibility. Mother simply has not adequately briefed an argument of error with respect to any issue involving the Indian Child Welfare Act. See *Cooke v. Gillespie*, 285 Kan. 748, 758, 176 P.3d 144 (2008).

That leaves us with Mother's claim that the district court should have granted her request for a continuance. "A district court has substantial discretion in controlling the proceedings before it." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008). Accordingly, unless the district court has made some legal or factual error (and none is claimed here), we review only "for abuse of discretion and reverse only if no reasonable person would take the view adopted by the district court." 38 Kan. App. 2d at 1105.

At the time the motion for continuance was made, the case had been pending for more than 2 years and Mother's final attorney had been in the case for nearly 4 months. While the State didn't formally notify Mother's attorney that it planned to call A.M.'s therapist until shortly before the trial, the therapist's name and the fact that A.M. was in

10

therapy were included in several reports to the court and the parties. So Mother could have interviewed the therapist or obtained the therapist's files with a subpoena. It's also significant that the court gave Mother a chance to renew her motion after the State presented its evidence, but at that point, Mother's attorney did not renew the motion. And Mother then got a brief break before having to present her testimony on the following Tuesday. We conclude that a reasonable person could agree with the district court's denial of the continuance motion.

The district court's judgment is affirmed.